WILLIAM J. FEE COAL CO. v. DAVIS, Director General of Railroads.

(District Court, S. D. New York. November 8, 1923.)

1. **Admiralty ☞44—Obvious mistake in acknowledgment of service of petition disregarded.**

Acknowledgment by respondent's attorney of receipt of copy of petition as "attorney for petitioner" must be read as "attorney for respondent," in view of obvious mistake.

2. **Admiralty ☞44—Attorney for Director General held to have appeared in one case tried with other cases against Director General, in which he appeared, involving same issue.**

Where separate libels against Director General of Railroads by separate owners, involving the same collision, were tried as one case, and all parties assumed that the disposition of the petition in one case would be the same as that in other cases, the Director General's attorney, who acknowledged service of copy of petition and represented the Director General in one case, will be deemed to have appeared for Director General in the other case, in which petition was dismissed in accordance with argument of the attorney, though he filed neither answer nor exception in such other case.

3. **Admiralty ☞44—Service of appearance on plaintiff's attorney sufficient.**

In admiralty, the entry of record of an appearance is a mere formality, and the service of the appearance on plaintiff's attorney is sufficient.

In Admiralty. Libel by the William J. Fee Coal Co. against James C. Davis, Director General of Railroads, operating the Lehigh Valley Transportation Company. On motion. Motion denied.

Park & Mattison, of New York City, for libelant.

Kirlin, Woolsey, Campbell, Hickox & Keating and Alexander & Ash, all of New York City, for claimant.

Wm. L. Barnett, of New York City, for respondent.

LEARNED HAND, District Judge. This cause is still moving in regions of mere possibilities. So far as concerns the only law which I have any right to consider, there was but one Director General, and he had no separate personæ for each carrier that he administered. However, the causes have all been reheard as if this was not the law, and consistency demands that they should be treated for these purposes as if he had several personæ.

The first of the libelant's points I shall consider is that the appearance of Bingham, Englar & Jones on February 28, 1922, being unrestricted, bound the Director in all his possible personæ. The libel of 1922, like its predecessor of 1920, was directed against the Director generally, but it alleged only facts which would have constituted a cause of action against the Lehigh Valley Company. The appearance in answer to it was not to be understood as extending the position already taken by those proctors under the first libel. They had already answered on the opposite theory and in pursuance of that notion had even petitioned in the Director as agent of the New Haven Company. Hence I conclude that the appearance effected no change.

[1] The cause, therefore, stood on the facts as they were on that date, assuming, without deciding, that thereafter no appearance could revive a claim against the Director. On July 27, 1920, the proctors for him as Lehigh Valley agent filed in this court their petition under the fifty-sixth rule, suing the Director as New Haven agent. This was flat in the teeth of the Globe & Rutgers Case, but for the moment I disregard that. These proctors had two courses, to serve an official of the New Haven Company, or to procure an appearance from its proctor. What they did was to serve the proctor with a copy of the petition containing a notice that it had that day been filed in court. The proctor received it and acknowledged the receipt on a copy retained by the proctors for the petitioner which read as follows:

"Copy of within paper received this 27th day of July, 1920. Charlmes M. Sheafe, Jr., Attorney for Petitioner."

The word "petitioner" was, of course, a mistake for "respondent," and must be read as such.

[2] There the pleadings rested until the cause came on before me for trial on January 11, 1922, along with two other cases. These were all tried as one, involving as they did the same collision; the libelants being each a member of the Mahanoy's tow. In one of them the Director as New Haven agent was certainly represented, strictissimi juris; he excepted to a petition exactly similar to that in this case, and I sustained his exception. That much is conceded by every one. Apparently he filed neither answer nor exception in this case, the practice being left very loose, as it is apt to be in the admiralty. Yet all parties, of course, assumed that one ruling affected all the cases on trial. No one could have supposed that the disposition of the petition would not be the same in each, and the decree in the case at bar, as in the others, held the Director General without qualification.

It is true that no formal disposition was made of the petition, as properly should have been done; but the decree could not have been entered as it was, except by dismissing the petition. No one wanted this done but the advocate for the Director as New Haven agent, and he had argued the point in that one of the three cases in which he filed his exception. When the decree in this case was entered, the petition was in fact disposed of in accordance with his position. No one suggests that he argued then that in the case at bar the petitioner had not served the client, for whom in appearance anyway he was in court. Nor when the order was made reinstating the petition in the other case, and overruling the exception, was it suggested that the case at bar was to be distinguished, because the Director as New Haven agent had never been served. Yet the proctor for the libelant in the case at bar was then in court and stated, as I remember, that he would recall his appeal.

If, after all this, a new set of proctors is to be allowed, upon intervening, to set up a point which had been assumed for 18 months, and after the time has expired when the formal defect can be remedied, justice miscarries and procedure in the admiralty is not as free from traps and gins as we are accustomed to boast.

[3] Coming, then to the strict law of the matter, it is true that at common law an appearance must have been entered of record. Mann v. Carley, 4 Cow. (N. Y.) 148; De Wandelaer v. Coomer, 6 Johns. (N. Y.) 328. But as early as 1819 Chancellor Kent said obiter in a suit in equity, Livingston v. Gibbons, 4 Johns. Ch. (N. Y.) 94, 99, that the entry was a mere formality, and that he thought that service of the appearance on the plaintiff's solicitor would probably be enough. Under modern codes that has, of course, long since been the rule. Bohnhoff v. Kennedy, 129 App. Div. 32, 113 N. Y. Supp. 133. And while I find nothing in the books on the point in the admiralty, there cannot be the slightest question that it is the law there, too.

The question is, then: What was the proper significance to be attached to the conduct of the proctor for the Director as New Haven agent? What did he mean when he accepted the petition and signed as "attorney for the petitioner." Certainly no less than that he was employed to act as his proctor in that cause, and that he accepted the petition as such. But for what purpose must he suppose that the petition was served on him? Clearly not for preliminary perusal; it was intended as a step in the proceeding, and the only conceivable step was to bring in his client. No one can honestly doubt that that is what the petitioner meant, what the respondent knew he meant, and what he knew that the petitioner would believe that he, the respondent, understood. Interpreted as the parties then stood, there can be no question that they believed it was all that was necessary between them.

Again, when this was followed by a trial in which the case was brought on with two others, having the same points, and when all three went through to decree as one, must not every one have understood that the advocate, who in the interest of the New Haven interests took part in one, meant to do so in the others? But, if he "took part in the suit," that was a general appearance. O'Brien v. Anderson, 273 Fed. 521 (C. C. A. 2). Was it allowable for him by an undisclosed reservation to contradict the normal significance which every one must have put upon his conduct?

If men are to be bound by the reasonable meaning of what they do, I cannot see how at this eleventh hour it is anything but the grossest injustice to deprive this libelant of the right to try his case against both personæ of the Director, provided he is finally ascertained to be an instance of multiple personality.

The motion is denied.